UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

POWKO INDUSTRIES, L.L.C.                          CIVIL ACTION

VERSUS                                            NO.

SCOTT FOLSE, PAT CRAWFORD,
CHAD ROUSSE, DMI CONTRACTORS, INC.,
DMI PIPE FABRICATION, L.L.C., MUSTANG
COATINGS, L.L.C., AND TOWER LIGHTING, INC.

**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

NOW INTO COURT, comes plaintiff Powko Industries L.L.C. ("Powko") to

allege as follows and to seek the relief set forth below.

INTRODUCTION

This Complaint seeks relief under the Racketeer Influenced and Corrupt

Organizations Act (18 U.S.C. § 1962 "RICO") and the Lanham Act (15 U.S.C. §

1125). Plaintiff Powko Industries L.L.C. ("Powko") is engaged in the distribution

of specialty lighting products and portable power products including "light

towers." A light tower is a mobile piece of equipment, usually trailered, with a

mast containing lights powered by a generator. Light towers are used in

connection with highway construction, sporting events, and other commercial

and industrial applications where generator powered illumination is needed.

Powko developed the concept of a larger version of a light tower and contracted

with an engineering firm to assist in developing the design and to prepare design

1

drawings.  Powko called its new light tower the "Equinox" and it owns the
registered trademark and design drawings.

Powko sought a manufacturer to build the Equinox light towers to be
marketed and sold to its existing and new customers.  By autumn of 2010, Powko,
Defendant Folse, and Defendant DMI Contractors Inc. ("Defendant DMI")
entered into a joint venture whereby Powko would provide the designs for the
Equinox light towers to DMI and another Folse family company to be formed
later, DMI Pipe, and one or more of the DMI companies would be the exclusive
manufacturer for Powko, and Powko would market and sell them.  The parties
would split the profits 50-50.  Defendant DMI created Defendant DMI Pipe for
this purpose, and the parties' agreement was reduced to writing in July 2011.
Shortly thereafter, however, Defendants misappropriated Powko's design,
manufactured the Powko Equinox light towers without Powko's knowledge, and
Defendants sold and rented the light towers as if they were DMI's products and
diverted Powko's existing and potential customers to Defendants.  As a result,
Powko was deprived of its share of profits, its business and customer base was
eroded, and DMI cut Powko out completely by refusing to sell light towers to
Powko.

JURISDICTION AND VENUE

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331
(federal question), 18 U.S.C. § 1964(a) and (c) (RICO), and 15 U.S.C. § 1125
(Lanham Act).

2.

Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28
U.S.C. § 1391(a), (b) and (d).

PARTIES

3.

Plaintiff Powko Industries L.L.C. ("Powko") is a Louisiana limited liability
company with its principal place of business in Baton Rouge, Louisiana.

4.

Defendant Scott Folse ("Defendant Folse") is an individual of the full age
of majority and domiciled in Baton Rouge, Louisiana.

5.

Defendant Pat Crawford ("Defendant Crawford") is an individual of the
full age of majority and domiciled in Baton Rouge, Louisiana.

6.

Defendant Chad Rousse ("Defendant Rousse") is an individual of the full
age of majority and a domiciled in Baton Rouge, Louisiana.

7.

Defendant DMI Contractors Inc. ("Defendant DMI") is a Louisiana corporation domiciled in Baton Rouge, Louisiana.

8.

Defendant DMI Pipe Fabrication L.L.C. ("Defendant DMI Pipe") is a Mississippi limited liability company with its principal place of business in Woodville, Mississippi and with its Louisiana business establishment in Baton Rouge.

9.

Defendant Mustang Coatings L.L.C. ("Defendant Mustang") is a Louisiana limited liability company with its principal place of business and domicile in Baton Rouge, Louisiana.

10.

Defendant Tower Lighting Inc. ("Defendant Tower Lighting") is a Louisiana corporation with its principal place of business and domicile in Baton Rouge, Louisiana.

FACTUAL BACKGROUND

11.

At all times pertinent hereto, Powko was a marketer and distributor of specialty lighting products and portable power products including light towers. Powko sells in the United States and internationally.  Powko's principals are Kyle Tonguis and Jarrett Pugh.

4

12.

A light tower is a mobile piece of equipment, usually trailered, with a mast containing lights powered by a generator.  Light towers are used in connection with highway construction, sporting events, and other commercial and industrial applications where generator powered illumination is needed.

13.

Defendant DMI is primarily engaged in pipe fabrication.  Defendant DMI Pipe is primarily engaged in manufacturing light towers.

14.

 Defendant Folse is an officer of Defendant DMI and a member and principal of Defendant DMI Pipe.  Defendant Folse was also a personal friend and mentor of Tonguis and an attorney who represented Tonguis and Powko since 2009.

15.

The legal work which Defendant Folse provided to Powko and Tonguis included, but is not limited to, the following:

    a.  The 2009 representation of Powko in an infringement dispute concerning website photographs;

    b.  Collecting past due accounts from customers of Powko;

    c.  Representation of Tonguis in divorce proceedings;

    d.  Advising Powko regarding products liability in 2011;

    e.  Drafting the Exclusive Manufacturing Agreement between Powko and

DMI Pipe; and,

f.   Advising Powko on warranty issues pertaining to a light tower winch design issue in July of 2012.

16.

Throughout Defendant Folse's friendship with Tonguis and before the instant joint venture, Defendant Folse knew that Tonguis and Powko marketed and sold light towers.

17.

Defendant Crawford is an officer and director of Defendant DMI in Louisiana.  He runs that company and is the Chief Estimator.  Defendant Crawford is also Vice President of Defendant DMI in Mississippi.  Additionally, Defendant Crawford oversees all operations of Defendant DMI Pipe in Mississippi.

18.

Defendant Rousse is the Controller, Treasurer, or both of Defendant DMI in Louisiana and is its Treasurer in Mississippi.  He is also an officer and member of Defendant DMI Pipe and handles all of its financial matters.

19.

In 2010 Powko developed the concept of a large light tower and contracted with an engineering firm to assist in developing the design and to prepare design drawings.  Powko called its new light tower the "Equinox" and registered the trademark which it owns along with the design drawings.

20.

Powko was looking for a manufacturer to build the Equinox exclusively for Powko, so Powko could then market and sell them to its existing and new customers.

21.

In July 2010, Pugh and Tonguis were speaking with Defendant Folse whom Tonguis knew and trusted, and Folse proposed that Defendant DMI or a company Folse would form, would manufacture Powko Equinox light towers exclusively for Powko, which Powko would market and sell.

22.

In August 2010, in furtherance of their preliminary discussions, Defendant Folse proposed establishing a manufacturing shop in Woodville, Mississippi, where the Powko designed light towers would be manufactured.

23.

In or about September 2010, an oral joint venture was created between Powko and Defendant Folse and Defendant DMI.  The parties agreed that Powko would provide the detailed design for the Equinox; Folse would use DMI or another Folse family company he was to form to manufacture the light towers exclusively for Powko and according to Powko's design; Powko would market and sell the light towers to its existing and new customers; and the parties would equally split the gross profits after deducting Folse's company's manufacturing costs.

24.

On September 23, 2010, Folse formed Defendant DMI Pipe for these purposes.

25.

Prior to this joint venture, neither Folse nor any of the other Defendants had any experience manufacturing light towers, and DMI Pipe did not exist. Powko could have chosen another manufacturer for the Powko light towers. However, Tonguis' trust in Folse as a friend, mentor, advisor, and lawyer gave Powko confidence in joint venturing with Defendants.

26.

In October or November 2010, Powko had completed its light tower design and procured and paid for design drawings.  The drawings were furnished to Defendant DMI to build the Equinox light towers.  The light towers were built by Defendant DMI in Baton Rouge while Defendant DMI Pipe was preparing to open in Woodville, Mississippi.

27.

Powko paid all of the manufacturing costs.  After considerable research, development, and modifications were completed on the first Powko Equinox light towers, they were sold to Powko's existing customers at a loss to Powko but at a profit to Defendant DMI.

28.

Each party to the joint venture provided contributions.  Defendant DMI
Pipe began manufacturing the Equinox, which was Powko's registered trade
name for the light tower.  Powko contributed the idea, design, and marketing
strategies to the joint venture, and began to market and sell the Equinox to
Powko's existing and new customers.

29.

After operating without a written agreement for several months,
Defendant DMI Pipe and Powko entered into an "Exclusive Manufacturing
Agreement," effective July 25, 2011, with a term of five years.  *See* Exhibit A.
Defendant Folse drafted the Exclusive Manufacturing Agreement.

30.

Under the Exclusive Manufacturing Agreement, Defendant DMI Pipe was
Powko's exclusive manufacturer of all Powko light towers based on Powko's
proprietary design and Powko's customers' specifications of current products and
currently known future products.

31.

DMI Pipe agreed that during the term of the Exclusive Manufacturing
Agreement neither DMI Pipe nor any of its owners or officers would sell to any
other buyer or distributor any light towers similar to the products manufactured
for Powko or Powko's customers in the geographical areas in which Powko was

conducting business, as specified in Exhibit C to the Agreement.  *See* Exhibit A ¶
13 (Non-Competition).

32.

The Exclusive Manufacturing Agreement provided that the joint venture
parties would continue to "equally divide gross profits" from Powko light tower
sales.

33.

On behalf of Powko and Defendant DMI Pipe, respectively, Pugh and
Defendant Folse negotiated and exchanged drafts and proposals for a more
comprehensive agreement.  However, in a November 3, 2011 email, Defendant
Folse informed Tonguis and Pugh that he would not sign a new agreement.
Therefore, the Exclusive Manufacturing Agreement ("the Agreement") remained
in place.

34.

In accordance with the Agreement, in 2011 and 2012 Powko actively
marketed and sold the Powko light towers manufactured by DMI Pipe.  The
parties split profits as the Agreement required.

35.

Powko had no idea that in 2011 and 2012 Defendants had developed a plan
to divert and steal Powko's designs, marketing strategies, customer lists, existing
customers, and potential new customers.

10

36.

For example, in July 2011 Defendant Folse texted Tonguis and asked to copy Powko's customer brochure for Canada Towers, which contained information and photos regarding Powko's light towers.  Defendant Folse stated that Powko's name would be on the finished brochure and that it would be used to market Powko light towers to DMI's pipe fabrication customers.  But Folse put DMI's name on the brochure and did not mention Powko.

37.

In September 2011, Crawford emailed Powko and Canada Towers, blaming Powko for a mix-up on a Vehicle Identification Number (VIN) when, at that time, Crawford knew that VIN numbers were DMI Pipe's responsibility.  This is the first of several instances where Defendants made negative and disparaging statements about Powko to various Powko customers.

38.

In December 2011, unbeknownst to Powko, Defendant Folse began a massive email marketing scheme attempting to sell the Powko light towers directly in interstate and international commerce, excluding Powko, and marketing the towers as if they were Defendant DMI or DMI Pipe's own.

39.

In December 2011, Defendant Folse emailed U.S. Pipeline Fabrication and informed it that DMI Pipe was building large light towers which would be ideal for pipeline construction.  On December 28, 2011, Folse emailed a customer for

whom DMI had completed some work and informed it that DMI "also manufacture[s] a large diesel light plant for lighting area at night" and attached a Facebook link which Folse created without Powko's knowledge.  Also in December 2011, Folse emailed a transmission company claiming that he had started building light towers as shown in the Facebook link.  Powko already had a website for the Equinox light towers which Folse should have used to refer the potential customer to Powko.  Instead, Folse used his own DMI Facebook link as part of the scheme to divert and steal Powko's business.

40.

On January 4, 2012, Folse emailed one potential customer and attached the Facebook link describing The Equinox light tower, using Powko's trademarked name without permission, saying that DMI had manufactured it for a customer (Kiewit) in Alberta, Canada. Folse also emailed a different customer attaching the Facebook link "on our light tower."

41.

Also in January 2012, Folse sent the Facebook link he was using to directly market the Powko designed light towers to Magnalight, Powko's competitor, and asked whether Magnalight wanted DMI Pipe to build the towers for it.  Folse exchanged at least five more emails with Magnalight in furtherance of this endeavor and attempt to build the Powko designed towers for others.  Folse supplied marketing material and photographs of the Equinox light tower to

Magnalight which Magnalight included on its website, marketing the light tower to the exclusion of Powko.

42.

In January 2012, Folse emailed the Facebook link he was using to directly market the light towers to Powko's customer, Kiewit, in Canada, along with DMI Pipe's marketing materials for the Equinox light towers without mention of Powko.  Via a February 2012 email, in violation of the Agreement, DMI Pipe registered as a vendor with Kiewit.

43.

In one of many misrepresentations made by Folse, in February 2012 he emailed EMSA in Panama attempting to interest EMSA in purchasing light towers which Folse claimed his company began building for a Canadian customer.  Folse deliberately misrepresented that DMI originated the idea for the Powko designed light tower.  Similarly, in another February 2012 email, Folse falsely told SOTREQ of Brazil: "I have developed a product and am interested in exploring business opportunities in Brazil and would need a manufacturer's rep." In February 2012, Folse sent several more emails to potential manufacturer's representatives in the Middle East claiming that Folse or DMI had developed the light tower and were looking for business in the Middle East.

44.

In February 2012, Folse even emailed the Navy and inquired if the light towers "looked at all like something the Navy may be interested in."  Also, on

February 1, 2012, Folse emailed another potential customer and thanked him for speaking with Folse about the customer's potential need for "the light towers we fabricate in Baton Rouge."

45.

In none of these emails did Folse mention Powko, that the towers were Powko Equinox towers, that Powko developed, paid for, and owned the design, or that Powko was the exclusive distributor.

46.

At times, when Powko was mentioned, it was mentioned in a false light. For example, in early March 2012 Folse emailed an engine company stating that Folse and DMI Pipe were marketing the light towers heavily and that "Powko is basically showing them (the towers) on their site but their main line is explosion proof lighting and smaller towers." That statement was false and an effort to further Defendants' scheme, including damaging Powko's reputation in the light tower industry.

47.

From December 2011 through 2013, without Powko's knowledge, Defendant Folse emailed hundreds of Powko's prior and potential customers in international and interstate commerce in a blatant attempt to establish Defendant Folse and Defendant DMI Pipe's own marketing and sales contacts for light towers without identifying Powko as the light tower designer, marketer, and seller. In the emails, Folse either directly offered information on the sale of the

light towers through DMI and/or solicited a manufacturing representative to sell the light towers on behalf of DMI.  Upon information and belief, those emails continue today.

48.

In February and March 2012 emails to Powko's biggest customer, distributor Canada Towers, Folse made disparaging statments about Powko and offered the Powko designed light tower at a cost lower than what DMI was insisting that Powko offer as the sales price.  Previously, in November 2011 Powko had quoted a price to Canada Towers of $89,000 on a two unit order.  That had been the going price.  However, DMI insisted that Powko sell the towers for no less than $95,000.  When Canada Tower's customer only agreed to an increased price of $92,000, DMI insisted that Powko pay it the difference (i.e., $6,000).

49.

In February 2012, Defendants demanded that Powko sell the light towers for no less than $95,000 per unit.  In emails to Powko on February 14 and 15, 2012, Defendant Rousse demanded a profit split of 90% for Defendant DMI Pipe and 10% for Powko.  In an April 2012 email, Defendant Rousse, on behalf of Defendant DMI Pipe, proposed a 75/25 split of profits with Powko, in DMI Pipe's favor, which Powko again rejected.  Powko never agreed to any change to the 50/50 gross profit split as per the Agreement.

50.

Unknownst to Powko, DMI Pipe was offering the same light towers for sale at discounted prices, such as $79,000 and even $69,000.  This damaged Powko's reputation in the light tower business and eroded its customer base.

51.

In January 2012 Powko discovered that, contrary to the Agreement and parties' protocol, Defendants were withholding placement of Powko's labels on the light towers at the same time that all other safety and instructional decals were being placed on the unit.  When questioned by Tonguis, in a January 27, 2012 email, Defendant Rousse on behalf of Defendant DMI claimed that they did not put the Powko decals on the units until they were being prepared for shipping.  In reply, Tonguis stressed the importance of the Powko labels for business and marketing purposes.  Defendant Rousse emailed Tonguis and told him that "we will take care of what we need to.  We always do. You do the same."

52.

In 2012 Defendants were either altering Powko decals to show DMI Pipe's name or substituting DMI Pipe's decals for Powko's decals.  In fact, on February 2, 2012, Defendant Rousse emailed Defendants Crawford and Folse and stated, "I want to see those Big DMI stickers on it.  Tell Kyle [Tonguis] if he wants Powko stickers on it, he has to buy it first. :)"  On November 26, 2012, an employee emailed Defendant Rousse and stated that they needed to do a lot of editing on

the decals because they still had Powko's name on them.  On January 8, 2013, that same employee emailed Defendant Rousse about "decal changes" and stated that "[u]nder NOTICE—replace POWKO light tower with DMILT" and "[u]nder WARNING—Recommended travel speed by POWKO is 55 mph, replace with DMILT."

53.

Later in 2012, Defendants caused manuals to be printed in DMI Pipe's name which displayed the Powko designed light towers as if they were DMI Pipe's own product.  This included whiting out Powko's label on the cover of the manual and replacing Powko's name with DMI Pipe's in the manual.  DMI even used pictures of Powko light towers in its manuals and marketing materials.

54.

These omissions and misrepresentations made it easy for Defendants to fraudulently pass the light towers off as their own idea, design, and product, all of which they conspired to steal from Powko.

55.

In mid-2012, and thereafter, Defendants continued manufacturing the Powko Equinox but began calling it the "DMI-LT," passing it off as Defendant DMI Pipe's own design and product.  The DMI-LT and its logo used the same color scheme, decal placement, and decals as the Powko light tower and logo.

56.

Defendants diverted and stole more business from Powko through the email marketing plan and under-cutting of Powko's prices through the balance of 2012.

57.

Defendants acted in this enterprise to cut Powko completely out of the manufacturer-seller relationship.

58.

Defendants' fraudulent intentions existed from nearly the outset.  For example, the actions by Folse, Crawford, Rousse, and DMI Pipe in late 2011 and early 2012 came on the heels of Folse's refusal to sign the more formal and comprehensive Exclusive Manufacturing Agreement, which was intended to replace the Agreement already in place.  Also, On January 26, 2012, Wayne Cavin, a DMI employee, emailed Defendant Rousse suggesting that because DMI was "giving some serious thought about selling our trailers [i.e., light towers] ourselves" a DMI Pipe website for the trailers might be a good idea.   Defendant Folse and DMI Pipe formed a website for DMI-LT (DMI Light Towers) on July 25, 2012 to market and sell the light towers under its own name although the units are virtually the same design and configuration as the Powko Equinox light tower.

59.

Defendants also attempted to cover up their scheme.  For example, on February 15, 2012, based upon Defendant's profit split proposal and strange conduct, Tonguis texted Defendant Folse and stated that if Defendant Folse was not happy with the parties' agreement, Folse could get his investment back plus profit and quit.  The next morning Folse replied that he did not want to call it quits and that he thought Tonguis and Pugh were doing enough for the business.

60.

Thereafter, Defendant Folse, through electronic communications, led Tonguis to believe that Folse was complying and acting in accordance with the parties' original agreement.

61.

At the end of March 2012, Defendant Folse told Tonguis via electronic communication that Defendant Folse was forced to close the Woodville fabrication shop—the main site where Powko's Equinox light towers were manufactured.

62.

However, Defendants  were not truthful about the closure.  DMI Pipe's Woodville shop only closed temporarily, reopened a few months later, and continued manufacturing light towers which DMI Pipe sold as its own to the complete exclusion of Powko.  Powko was never informed of these facts.

63.

In July 2012, when communicating with Tonguis, Defendants acted as if all was well with Tonguis and Powko.  For example, on July 6, 2012, Defendant Folse inquired via email about Tonguis' wedding plans, and Defendant Rousse and Tonguis were texting about a motor that a customer burned-up and how to get a quick replacement.

64.

On August 16, 2012, Tonguis emailed Defendant Rousse to update him on the fact that business had picked up dramatically over the last month and Tonguis described various deals that he was working on in international sales.  Of course, Tonguis was not told that Defendants were diverting business and engaging in sales of the light towers behind Powko's back.

65.

As another example, Tonguis emailed Rousse on October 16, 2012, at 10:47 a.m., to bring him up to date regarding potential sales and to inquire whether DMI had 5 light tower units available and to determine whether auxiliary fuel tanks could be added to them as per the customer's request. Instead of responding directly, Rousse forwarded the October 16, 2012 email to Folse at 11:07. a.m., with the inquiry: "Think how you want to answer this."

66.

Rousse did not respond to Tonguis on Oct 16, 2012, and Tonguis emailed him again later that afternoon at 3:40 p.m., expressing the urgency of getting the

information for the 5 unit order and auxiliary fuel tanks.  Instead of responding,

Rousse again forwarded the second email to Folse at 3:54 p.m.  Rousse still did

not respond, and Tonguis texted Rousse at 4:54 p.m. that same day, expressing

how important the deal was and that there was a time constraint.

67.

The next day, October 17, 2012, at 11:16 a.m., Tonguis emailed Folse and

told him of his unsuccessful attempts to contact Rousse the day before

concerning the 5 units, the auxiliary fuel tanks, and the urgency of the order.

Folse did not respond, so Tonguis texted Folse at 11:21 a.m., and told him about

the 5 unit order, the fuel tanks, the urgency, and the lack of response from

anyone at DMI.

68.

Finally, at 11:37 a.m. on October 17, 2012, Rousse texted Tonguis and

stated, untruthfully, that he had been out of the office and that he would "look" at

the emails when he got back in the office later that day.  Rousse had already

"looked" at the emails because he had forwarded them to Folse asking for

instructions on how to respond.  Folse and Rousse were conspiring to mislead

Tonguis about their actions and strategizing on how to respond in order to

conceal their activities.

69.

At 12:24 p.m. on October 17, 2012, Tonguis texted Folse about Crawford

and Rousse wanting to keep the light tower prices high so that sales would slow

and DMI Pipe could build up available inventory. This damaged Powko's ability to sell and deliver products quickly to the customers who wished to purchase.

70.

At 1:05 p.m. on October 17, 2012, Rousse finally responded to Tonguis and for the first time informed Tonguis that DMI Pipe had made a deal with Cavalier Industries of Canada to turn over all light tower units to them for marketing and sales.  Cavalier was Powko's customer, and Defendants stole Cavalier from Powko by contracting with Cavalier to the exclusion of Powko and contrary to the Agreement.

71.

In the above communication, Rousse told Tonguis that from that point on any units purchased from Powko by its Canadian customers would have to go through Cavalier Industries.

72.

Defendants had unilaterally replaced Powko with Cavalier as DMI Pipe's own distributor of the light towers for Canadian clients.  At this point, Defendants had "pulled the rug" out from under Powko by creating an integrated business to completely cut Powko out of the picture.

73.

At all times during the term of the Agreement, all of Powko's sales were made to Canadian customers, and Canada was a protected geographical sales territory of Powko under the terms of the Agreement.

74.

From July 2012 through April 2014, and presumably thereafter, without Powko's knowledge Defendants engaged in over 120 instances of selling or renting Powko light towers to CB&I, Cavalier, and S&B, in Canada and the United States, passing them off as DMI Pipe's products.  Defendant DMI Pipe invoiced and was paid for these transactions via  mails or wire.  From July 2012 through April 2014, DMI Pipe, Tower Lighting, or Mustang Coatings billed and received over $2.8 million for sales and rentals of the Powko light towers, to the complete exclusion of Powko.

75.

To date, DMI Pipe has not provided an accounting to its joint venturer Powko and has not paid Powko any percentage of the gross profits or income derived from the light towers as stated in the foregoing paragraph.

76.

 On December 12, 2013, demand was made upon DMI Pipe for an accounting of all income, revenues, and proceeds received by DMI Pipe or any related entity arising from the manufacture or sale of any light towers from July 25, 2011, to present.

77.

The parties never amended their Agreement or entered into a new agreement, and the Agreement was never terminated under Paragraph 12.2, which required ninety days written notice by the terminating party to the other party, until December 27, 2013.  At that time, DMI Pipe through legal counsel purported to exercise the Agreement's termination provision.

78.

Until January 2014, the light towers sold and rented by Defendant DMI Pipe continued to utilize Powko's model numbers, which began with "PLT" (i.e. Powko Light Tower).

79.

On or about February 20, 2014, Defendant Folse formed Defendant Mustang, and Defendant Folse is its officer and member.  On February 18, 2014, Defendant Folse changed the name of CMF of Baton Rouge Inc. to Tower Lighting Inc.  Defendant Rousse is Defendant Tower Lighting's Controller.

80.

Upon information and belief, Defendant Mustang and Defendant Tower Lighting became the mere continuation of Defendant DMI Pipe after Folse closed the Mississippi fabrication plant.  Defendant Mustang and Defendant Tower Lighting continue to fabricate, market, sell, or rent The Equinox or a virtually identical light tower.  After January 2014, Defendants changed the model numbers to begin with "TL" (i.e., Tower Lighting).

81.

Upon information and belief, Defendants Mustang and Tower Lighting continue to utilize Powko's designs, customer list, marketing strategies, and business plan.

82.

All or some of Defendants, or persons acting under their orders or on their behalf, diverted and stole Powko's customers, light tower design, and marketing methods in an obvious, intentional, and bad faith breach of the Agreement and in an enterprise that is illegal under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962 "RICO") and the Lanham Act (15 U.S.C. § 1125).

## COUNT I – RICO § 1962 (c)

83.

Paragraphs 1 through 82 are incorporated herein by reference.

84.

Defendants Folse, Crawford, Rousse, DMI, DMI Pipe, Mustang, and Tower Lighting are "persons" as defined in 18 U.S.C. § 1961(3).  They are collectively referred to in Count I as the "Count I RICO Defendants."  While each defendant corporation and company is a RICO "person," the enterprise as it relates to each of them is not the same corporation or company, but rather is the association of all the corporations, companies, and individual defendants.

## The Association-in-Fact RICO Enterprise

85.

All of the Count I RICO Defendants collectively are an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4), all of whose activities affect interstate and international commerce.  Upon information and belief, the Count I RICO Defendants formed, maintained, and continue to maintain a close interlocking association.  The association was formed to establish and utilize corporations or companies to build, market, distribute, and sell light towers, which were designed and trademarked, to misappropriate Powko's designs, existing customers, potential new customers, and business of marketing and distributing light towers, and to defraud Powko as set forth in paragraphs 1 through 82 in order to enrich the RICO Defendants.

**Roles of the Individual RICO Persons in the Association-in-Fact Enterprise**

86.

Defendant Scott Folse participated in the operation and management of the enterprise's affairs.  Folse participated in the formation, operation, and management of DMI, DMI Pipe, Mustang Coatings, and Tower Lighting.  Folse is an officer of DMI and a member/principal of DMI Pipe.  Folse is a principal, registered agent, officer, director, and or head of operations for both Mustang Coatings and Tower Lighting, two additional companies which, on information and belief, Defendants are currently using to perpetuate their scheme.  Folse, with others, fraudulently conceived and executed the planned enterprise to divert and steal Powko's light tower designs, design drawings, customer list, existing

customers, potential customers, and marketing strategy.  Folse also directed, with
Crawford and Rousse, the passing off as DMI Pipe's own products the light
towers which were built with Powko's designs.  Folse further conspired with
Crawford and Rousse to surreptitiously divert and take over all of Powko's
business and to deliberately exclude Powko from access to the customers it had
brought to the joint venture at the outset.

87.

Defendant Crawford participated in the operation and management of the
enterprise's affairs.  Crawford is an officer and director of DMI in Louisiana.  He
runs that company and is the chief estimator.  Crawford is also vice president of
DMI in Mississippi.  Additionally, Crawford oversaw all operations of DMI Pipe
in Mississippi.  Crawford also participated with Folse and Crawford in conceiving
and executing the fraudulent scheme to divert and steal Powko's light tower
designs, design drawings, customer list, existing customers, potential customers,
and marketing strategy.  Additionally, Crawford participated with Folse and
Rousse in passing off as DMI Pipe's own products the light towers which were
built with Powko's designs.  Crawford also conspired with Folse and Rousse to
surreptitiously divert and take over all of Powko's business and to deliberately
exclude Powko from access to the customers it had brought to the joint venture at
the outset.

88.

Defendant Rousse is the controller, treasurer, or both of DMI in Louisiana, treasurer of DMI in Mississippi, and Controller of Defendant Tower Lighting. Additionally, Rousse is an officer and member of DMI Pipe and handles all financial matters for DMI Pipe. Rousse also participated with Folse and Crawford by conceiving and executing the fraudulent scheme to divert and steal Powko's light tower designs, design drawings, customer list, existing customers, potential customers, and marketing strategy. Additionally, Rousse participated with Folse and Crawford in passing off as DMI Pipe's own products the light towers which were built with Powko's designs. Rousse also conspired with Folse and Crawford to surreptitiously divert and take over all of Powko's business and to deliberately exclude Powko from access to the customers it had brought to the joint venture at the outset.

89.

Defendant DMI built Powko designed light towers and marketed, sold, and invoiced for them by mail, fax, or email, to interstate and international distributors and customers and received funds by mail or wire from interstate and international distributors and customers.

90.

Defendant DMI Pipe was utilized by Folse, Crawford, and Rousse to build Powko designed light towers, to market and sell such towers, and to invoice by mail, fax, or email to interstate and international distributors and customers and

received funds by mail or wire from interstate and international distributors and customers.

91.

Defendant Tower Lighting became a mere continuation of Defendant DMI Pipe when Folse closed the Mississippi fabrication plant.  Defendant Tower Lighting continues to fabricate, market, or sell the virtually identical light tower which all Defendants conspired to steal from Powko.

92.

Defendant Mustang became a mere continuation of Defendant DMI Pipe when Defendant Folse closed the DMI Pipe Mississippi fabrication plant and Defendant Mustang continues to fabricate, market, or sell the virtually identical light tower which all the Defendants conspired to steal from Powko.

93.

By the foregoing conduct, the Count I RICO Defendants all jointly defrauded Powko and each Count I RICO Defendant knowingly furthered the execution of the RICO enterprise.

**The Racketeering Activity**

94.

The Count I RICO Defendants' activities constitute a pattern of racketeering activity as set forth in 18 U.S.C. § 1961(5).  Many of the activities of the RICO Defendants constitute wire fraud in violation of 18 U.S.C. § 1343 or mail fraud in violation of 18 U.S.C. §1341.

95.

Instances of the wire fraud and mail fraud predicate acts include all emails, faxes, mailings, and other transactions conducted via the wires or mails, including, but not limited to:

a.      The July 2011 emails referenced in paragraph 31;

b.      The September 2011 emails referenced in paragraph 37;

c.      The emails of December 2011, January 2012, February 2012, and March 2012 referenced in paragraphs 36-44;

d.      The March 2012 emails referenced in paragraph 46;

e.      The several hundred marketing emails referenced in paragraph 47;

f.      The February and March 2012 emails referenced in paragraphs 48-49;

g.       The use of the mails or wires to send tower manuals as set forth in paragraph 53;

h.      The February and March 2012 emails regarding closing of the DMI Pipe shop in Mississippi referenced in paragraphs 59-62 and all other use of the mails or wires to conceal the Rico Defendants' scheme;

i.      All mailings, faxes, or emails to the Louisiana Secretary of State in order to establish Mustang Coatings and Tower Lighting as such was in furtherance of the RICO Defendants' scheme;

**j.**   All mailings, faxes, emails, or other use of the mails or wires,

including all invoices, payments, and billings, from July 2012 to

April 2014 made in association with the 120 instances of sales or

rentals of light towers as referenced in paragraph 74.

## COUNT II – RICO § 1962(c)

96.

Paragraphs 1 through 95 are incorporated herein by reference.

97.

This alternative count is against defendants Folse, Crawford, and Rousse.

These defendants are "persons" as defined in 18 U.S.C. § 1961(3).  They are

collectively referred to in Count II as the "Count II RICO Defendants."

98.

All of the Count II RICO Defendants collectively are an association-in-fact

enterprise as defined in 18 U.S.C. § 1961(4), all of whose activities affect interstate

commerce.  Upon information and belief, the Count II RICO defendants formed,

maintained, and continue to maintain a close interlocking association.  The

association was formed to establish or utilize competing companies, including

DMI, DMI Pipe, Mustang, and Tower Lighting, to conduct business in light tower

rentals and sales, to compete with Powko therein, to enrich themselves, and to

defraud Powko as set forth in paragraph 1 through 82.  The association has lasted

several years.

## COUNT III – RICO § 1962(c)

99.

Paragraphs 1 through 95 are incorporated herein by reference.

100.

This alternative count is against defendants Folse, Crawford, and Rousse. These individuals are "persons" as defined in 18 U.S.C. § 1961(3).  They are collectively referred in this Count as the "Count III RICO Defendants."

101.

DMI, DMI Pipe, Mustang, and Tower Lighting are enterprises as defined in 18 U.S.C. § 1961(4), whose activities affect interstate commerce.

102.

As evidenced by the foregoing facts, the Count III RICO Defendants established DMI, DMI Pipe, Mustang, and Tower Lighting, or conducted those companies' affairs, through the aforementioned pattern of racketeering activity, including those predicate acts stated in paragraph 95.

## COUNT IV – RICO § 1962 (a)

103.

Paragraphs 1 through 95 are incorporated herein by reference.

104.

This count is against Folse, Crawford, Rousse, DMI, DMI Pipe, Mustang, and Tower Lighting, referred to collectively in this Count as the "Count IV RICO Defendants."  These individuals are "persons" as defined in 18 U.S.C. 1961(3).

105.

DMI, DMI Pipe, Mustang, and Tower Lighting are "enterprises" as defined in 18 U.S.C. 1961(4), whose activities affect interstate commerce.

106.

As evidenced by the foregoing acts, the Count IV RICO Defendants received income derived from the aforementioned pattern of racketeering through the sale and rental of Powko light towers and invested at least part of that income in the establishment or operation of DMI, DMI Pipe, Mustang, Tower Lighting, or all of these companies.

107.

Powko was injured by the racketeering activity and the operations of DMI, DMI Pipe, Mustang, and Tower Lighting which was funded by investment of the racketeering income into those companies.

## Count V – RICO § 1962(d)

108.

The allegations of paragraphs 1 through 107 are incorporated herein by reference.

109.

As detailed above, all Defendants agreed and conspired to violate 18 U.S.C. 1962 (a) or (c).  Defendants knowingly and intentionally furthered the conspiracy.  The object of the conspiracy was to defraud Powko out of substantial

sums of money by misappropriating Powko's light tower designs, customers, potential customers, and marketing plans as set forth above.

110.

Upon information and belief: the Count I RICO Defendants and Count II RICO Defendants intentionally conspired and agreed to conduct the affairs of the association-in-fact enterprise through a pattern of racketeering activity; the Count III RICO Defendants also intentionally conspired and agreed to conduct the affairs of DMI, DMI Pipe, Mustang, and Tower Lighting through a pattern of racketeering activity; the Count IV RICO Defendants conspired to violate 18 U.S.C. § 1962(a).

111.

Upon information and belief, in each instance, at least two of the defendants agreed to commit a substantive RICO offense and the other defendants knew of and agreed to the overall objective of the RICO offense and agreed to facilitate that objective.

112.

The RICO conspiracy and the overt acts committed in furtherance of it directly and proximately caused injury to Powko's business as set forth above.

**Count VI – Violations of 15 U.S.C. § 1125 ("Lanham Act")**

113.

Paragraphs 1 through 82 are incorporated herein by reference.

114.

This count is against all Defendants as they violated or conspired to violate 15 U.S.C. § 1125(a).

115.

15 U.S.C. § 1125(a) provides, in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
          . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

116.

As described above, the Defendants deliberately hid the fact that Powko conceived and developed the design of the light tower which DMI agreed to manufacturer under an exclusive manufacturing agreement for Powko.

117.

Nearly from the inception of the manufacturing activity, Folse, DMI Pipe and the other Defendants began taking credit for the concept and design of Powko's light towers, and Defendants either deliberately did not install the identifying Powko decals on the light towers or substituted DMI Pipe's name on

decals placed on the light towers, while utilizing a Powko model number configuration beginning with "PLT" (i.e., Powko Light Tower") followed by numbers.

118.

While trying to secure more customers to whom he could sell light towers without including Powko, Folse told potential customers that he had developed the light towers.

119.

Moreover, in his massive email solicitation of light tower business, Folse used Powko's trademarked name "The Equinox," in the Facebook weblink he referenced without Powko's permission, authorization, and/or knowledge.

120.

Defendants' conduct, such as illustrated in Paragraphs 46, 47, and 51 through 55, and 119, is likely to cause confusion and deception as to the affiliation, connection, or association of Defendants and their goods and services with Powko.  Upon information and belief, this confusion or deception influenced customers' decisions to purchase or rent towers from Defendants.

121.

This conduct resulted in injury to Powko, including Defendants usurping Powko's business of marketing and selling light towers, and the destruction of Powko's business at the enrichment of Defendants.

122.

Such actions constitute unfair trade practices and "reverse passing off" under the Lanham Act.

123.

In addition to damages, pursuant to 15 U.S.C. § 1117(a), Powko is entitled to an award of attorney's fees and costs.

### Jury Demand

124.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Powko demands trial by jury.

WHEREFORE, plaintiff Powko Industries, L.L.C. prays for judgment in its favor and against defendants Scott Folse, Pat Crawford, Chad Rousse, DMI Contractors Inc., DMI Pipe Fabrication L.L.C., Mustang Coatings L.L.C., and Tower Lighting Inc. as follows:

1.      For all damages to which Powko is entitled against all Defendants, and each of them solidarily, in as yet an undetermined amount, but including treble damages pursuant to 18 U.S.C. § 1962(c);

2.      For all costs and attorney's fees incurred in the investigation and litigation of this matter pursuant to 18 U.S.C. § 1964(c) and 18 U.S.C. § 1117(a);

3.      For an accounting from all Defendants of all benefits,

consideration, and profits received as a result of defendants' violations

noted herein;

4.      For any and all other relief to which Powko is entitled by law or

which this Court may deem equitable and proper.

Respectfully submitted,

HYMEL DAVIS & PETERSEN, L.L.C

s/Michael Reese Davis
L. J. Hymel (LBN 7137)
Michael Reese Davis (LBN 17529)
Glen R. Petersen (LBN 10473)
Tim P. Hartdegen (LBN 27496)
10602 Coursey Blvd.
Baton Rouge, Louisiana 70816
Phone: (225) 298-8118
Fax:  (225) 298-8119
mdavis@hymeldavis.com

Counsel for Plaintiff

**SERVICE INFORMATION**

Scott Folse
16942 Old Hammond Highway
Baton Rouge, LA  70816

Pat Crawford
16942 Old Hammond Highway
Baton Rouge, LA  70816

Chad Rousse
16942 Old Hammond Highway
Baton Rouge, LA  70816

DMI Contractors Inc.
Through registered agent:

Scott J. Folse
16942 Old Hammond Highway
Baton Rouge, LA  70816

DMI Pipe Fabrication L.L.C.
Through Officers:
Chad Rousse or Scott Folse
16942 Old Hammond Highway
Baton Rouge, LA  70816

Mustang Coatings L.L.C.
Through registered agent:
Scott Folse
16942 Old Hammond Highway
Baton Rouge, LA  70816

Tower Lighting Inc.
Through registered agent:
Scott Folse
16942 Old Hammond Highway
Baton Rouge, LA  70816